**Roger D. OSBORN, Plaintiff–Appellant,**

v.

**ASHLAND COUNTY BOARD OF ALCOHOL, DRUG ADDICTION AND MENTAL HEALTH SERVICES, et al., Defendants–Appellees.**

No. 91–4069.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 21, 1992.

Decided Oct. 29, 1992 *.

Mark A. Serrott, Columbus, Ohio (argued and briefed), for plaintiff-appellant.

David H. Meade (argued and briefed), Mark Landes, David G. Jennings, Isaac, Brant, Ledman & Becker, Columbus, Ohio, for defendant-appellee.

Before: JONES and SILER, Circuit Judges; and PECK, Senior Circuit Judge.

PER CURIAM.

In this case, Roger D. Osborn, former executive director of an alcohol, drug addiction and mental health services board, claims that he was dismissed from his position on the board without due process of law. His due process arguments having been rejected by a state court, the federal district court entered summary judgment against Osborn on collateral estoppel grounds. We affirm the order of summary judgment on principles of res judicata. *See Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.*, 772 F.2d 214, 216 (6th Cir. 1985) (per curiam) ("[a] decision below must be affirmed if correct for any reason, including a reason not considered by the lower court").

*I. The Case*

In 1973, Osborn became the executive director of the Ashland County Board of Mental Health. He was executive director in October 1989 when, pursuant to an Ohio statute, the board was expanded to encompass the areas of drug and alcohol addiction. The new Ashland County Board of Alcohol, Drug Addiction, and Mental

---

* This decision was originally issued as an "unpublished decision" filed on October 29, 1992.

Health Services ("Board") conducted its first meeting on March 19, 1990.

At this meeting, Board member and defendant William Van Tilburg moved to remove Osborn "forthwith" for cause, citing Osborn's: (1) failure to cooperate with other organizations in need of services funded by the Board; (2) maintaining a conflict of interest as chief executive officer of a corporation contracting to provide services for the Board; and (3) lack of fiscal responsibility. Van Tilburg concluded by stating, "I'm going to resolve further that Mr. Osborn obviously be granted a hearing on this matter at a time and place to be established by the Board." The motion was seconded, and was carried by a vote of 10–5, with one abstention. Osborn retained counsel shortly thereafter.

The Board set a hearing date of March 26, 1990. Upon request by counsel for Osborn, and after an initial objection by a majority of the Board, the hearing was continued to April 23, 1990.

On April 26, 1990, after three evenings of hearings during which several witnesses were heard and documents were introduced, and over which an independent hearing officer presided, the Board voted 12–2 in favor of a motion to remove Osborn "effective 11:50, April 26, 1990."

Pursuant to Ohio Revised Code Annotated § 2506.01 (Baldwin 1987), Osborn brought an action in the Court of Common Pleas of Ashland County, Ohio, seeking to have the Board's termination decision overturned. He commenced his arguments in favor of reversal with the following:

I. THE BOARD'S MARCH 19, 1990 ACTION TERMINATING MR. OSBORN WITHOUT THE BENEFIT OF A HEARING VIOLATED MR. OSBORN'S CONSTITUTIONAL DUE PROCESS RIGHTS.

II. THE POST–TERMINATION HEARING CONDUCTED BY THE BOARD VIOLATED MR. OSBORN'S CONSTITUTIONAL DUE PROCESS RIGHTS.

  A. THE BOARD ERRED IN FAILING TO *TIMELY* PROVIDE A *WRIT-TEN* LIST OF THE CHARGES AND LIST OF WITNESSES.

  1. THE BOARD ERRED IN REFUSING TO GRANT A CONTINUANCE AND BY ONLY GIVING MR. OSBORN TWO (2) BUSINESS DAYS TO RESPOND TO THE CHARGES AND PREPARE FOR THE HEARING.

B. MR. OSBORN WAS DENIED HIS DUE PROCESS RIGHT TO A FAIR HEARING BEFORE AN UNBIASED AND IMPARTIAL TRIBUNAL.

  1. THE BOARD UNLAWFULLY PERFORMED INCONSISTENT FUNCTIONS BY ACTING AS ACCUSER, INVESTIGATOR, AND DECISION MAKER.

  a. THE BOARD DID NOT ACT AS A FAIR AND IMPARTIAL TRIBUNAL AND WAS BIASED AGAINST MR. OSBORN.

  2. THE BOARD ERRED IN CONDUCTING EX PARTE COMMUNICATIONS WITH WITNESSES PRIOR TO THE HEARING.

C. THE BOARD ERRED IN CONSIDERING EVIDENCE OUTSIDE THE SCOPE OF THE ORIGINAL CHARGES MADE ON MARCH 19, 1990.

On June 18, 1991, upon review of the transcript of the administrative hearing and briefs submitted by the parties, the state court concluded:

> ... This Court finds ... that the decision of the board is not unconstitutional; that it is not illegal; that it is not arbitrary; that it is not capricious; that it is not unreasonable; and that it is supported by the preponderance of substantial, reliable and probative evidence.

While this Court would have preferred more civility in the manner in which the hearing before the Board was conducted, a hearing was provided to Roger Osborn and he had an opportunity to be heard as to why his services were terminated by the Board.

For all of the reasons set forth hereinabove, and recognizing that the Board as fact finder, had the opportunity to ob-

serve the demeanor of the witnesses and to weigh their credibility, this Court can only find that the decision of the Board was proper in all respects and that it was supported by the preponderance of substantial, reliable and probative evidence on the whole record and the Court, therefore, affirms the decision of the Board below.

Osborn appealed this decision to the Ashland County Court of Appeals in the Fifth Appellate District of Ohio. On August 20, 1992, the appellate court affirmed the decision of the lower court.

Meanwhile, on October 17, 1990, Osborn filed a complaint in the United States District Court for the Northern District of Ohio, alleging, *inter alia*, that the Board deprived him of "property he was legitimately entitled to" without due process of law in violation of the Fourteenth Amendment and under 42 U.S.C. § 1983 (1988). The district court granted summary judgment for defendants on collateral estoppel grounds. Specifically, the court held that the state court's ruling on the due process issues raised by Osborn precluded the federal court from ruling on them.

Osborn timely appealed the dismissal of his § 1983 claim.

## II. Standard of Review

In reviewing the district court's order of summary judgment, we look to the standard of review set forth in *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987): "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate."

## III. Res Judicata

The Constitution's Full Faith and Credit Clause, U.S. Const. art. IV, § 1, is implemented by the Full Faith and Credit Act, 28 U.S.C. § 1738 (1988), which provides that properly authenticated records and judicial proceedings of any court of any state, territory or possession of the United States "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." According to this statute, federal courts are to give the judgments of state courts the same preclusive effect as would be given in the state in which the judgment was rendered. This principle applies with undiminished force to actions brought under 42 U.S.C. § 1983, and applies whether the "preclusive effect" relates to res judicata (claim preclusion), *see Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 80–85, 104 S.Ct. 892, 895–98, 79 L.Ed.2d 56 (1984), or collateral estoppel (issue preclusion), *see Allen v. McCurry,* 449 U.S. 90, 94–105, 101 S.Ct. 411, 414–21, 66 L.Ed.2d 308 (1980). The policies advanced by this principle include conserving judicial resources, protecting adversaries from the expense and vexation attending multiple lawsuits, and fostering reliance on judicial determinations by minimizing the possibility of inconsistent decisions. *See Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979).

Osborn brought suit in a state court, alleging violations of his right to due process. The state court considered, *inter alia,* the transcript of Osborn's administrative hearing, as well as a fifty-six-page brief and a twenty-eight-page reply brief submitted by Osborn, before reaching the conclusion that "the decision of the Board is not unconstitutional . . . [and] was proper in all respects."

In Ohio, Osborn would be precluded from bringing a claim based on the same cause of action in a subsequent proceeding in state court. Provided one has a "fair opportunity to fully litigate," *see Goodson v. McDonough Power Equip., Inc.,* 2 Ohio St.3d 193, 443 N.E.2d 978, 985 (1983), Ohio's doctrine of claim preclusion bars relitigation of those claims upon which a final judgment on the merits has been rendered, *see generally Norwood v. McDonald,* 142 Ohio St. 299, 52 N.E.2d 67, 71 (1943), as well as those claims which might have been litigated in the first lawsuit and which arise from the same subject matter

and constitute the same cause of action, *see Rogers v. City of Whitehall*, 25 Ohio St.3d 67, 494 N.E.2d 1387, 1388 (1986); *Norwood*, 52 N.E.2d at 71. "The test for determining whether a second suit is for the same cause of action as the first is to consider the facts necessary to sustain the two claims." *Duncan v. Peck*, 752 F.2d 1135, 1139 (6th Cir.1985) (applying Ohio law). Osborn's due process cause of action advanced in the state suit rests on the same "necessary" facts as the cause of action now put forward. Thus, since an Ohio court would preclude Osborn from bringing his present cause of action, federal courts should preclude him as well.

This circuit considered a case quite similar to Osborn's in *Gutierrez*. There, plaintiff, formerly a police officer, brought an action in state court alleging, *inter alia*, that city officials had denied him due process in dismissing him. The state court upheld the decision of the administrative body which had determined that the plaintiff had been properly terminated. On appeal, plaintiff alleged that he was deprived of "the most rudimentary requirements of due process of law." The state appeals court, however, found the administrative decision to be constitutionally sound.

Plaintiff then brought a § 1983 action in federal court, alleging, among other things, that city officials had denied him due process. The district court dismissed this action on claim preclusion grounds. This court affirmed that decision, stating firmly, "Plaintiff could have and should have litigated all aspects of his denial of due process claim in his state suit.... Plaintiff has had the opportunity to fully and fairly litigate his claim on the merits in state court. There is no reason to allow him to reopen his claim in the federal courts." *Gutierrez*, 826 F.2d at 1538.

In the instant case, Osborn similarly had the opportunity to litigate all aspects of his due process cause of action in state courts. Thus, this court is precluded, by res judicata and the Full Faith and Credit Act, from addressing Osborn's § 1983 claim. *Cf. Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1035–36 (9th Cir.1990), *cert. denied*, — U.S. —, 112 S.Ct. 417, 116 L.Ed.2d 437 (1991).

In an effort to avoid the preclusive effect of the res judicata doctrine, Osborn argues that, under *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 482, 102 S.Ct. 1883, 1898, 72 L.Ed.2d 262 (1982), full faith and credit is not to be given "constitutionally infirm" state court judgments. The state court's judgment, in Osborn's view, is constitutionally infirm because it does not view Osborn's interest in his continued employment as a property interest, to be taken from him only after fair notice of charges, an opportunity to prepare a vigorous defense, and a pre-termination hearing before a neutral and impartial tribunal. Since Osborn could be removed only "for cause," he claims he had such a property interest. And since whether or not Osborn had a property interest impacts his right to constitutional due process, the state court's ruling was "constitutionally infirm"—so the argument goes.

The essence of Osborn's argument on this score is that the state court mistakenly interpreted case law affecting his constitutional rights. If federal courts were to ignore the preclusive effects of state court judgments whenever constitutional law was interpreted or a constitutional right was at issue, the Full Faith and Credit Act would be undermined. As the Supreme Court in *Allen* wrote: "[T]he Court's view of § 1983 ... lends no strength to any argument that Congress intended to allow relitigation of federal issues decided after a full and fair hearing in a state court simply because the state court's decision may have been erroneous." *Allen*, 449 U.S. at 101, 101 S.Ct. at 418 (case reference omitted); *see also United States v. Moser*, 266 U.S. 236, 242, 45 S.Ct. 66, 66–67, 69 L.Ed. 262 (1924) ("[A] fact, question, or right distinctly adjudged in the original action cannot be disputed in a subsequent action, even though the determination was reached upon an erroneous view or by an erroneous application of the law."). State courts have the authority to decide federal issues. Federal courts are not to be used as state courts of appeal. *See Migra*, 465 U.S. at 84, 104 S.Ct. at 897–98; *Allen*, 449 U.S. at 105, 101 S.Ct. at 420.

The "constitutional infirmity" referred to in *Kremer* is best understood, in context,

as a denial of procedural due process by the state court such that a party did not truly have the opportunity fully and fairly to litigate his or her claims or issues. Indeed, the two cases cited as a footnote to the *Kremer* proposition at issue both discuss situations where insufficiency of process leads to lack of jurisdiction over a defendant, which in turn leads to a void judgment. *McDonald v. Mabee*, 243 U.S. 90, 92, 37 S.Ct. 343, 344, 61 L.Ed. 608 (1917); *Haddock v. Haddock*, 201 U.S. 562, 567–68, 26 S.Ct. 525, 526–27, 50 L.Ed. 867 (1906), *overruled by Williams v. North Carolina*, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 (1942). A judgment which is void in a forum state for failure to meet the minimal procedural requirements of the Fourteenth Amendment's Due Process Clause is not subject to the Full Faith and Credit Act. We simply do not have such a case here. There is no indication that Osborn was denied minimal due process by the Ohio court system.

AFFIRMED.