**MARINE MIDLAND BANK,**
**Plaintiff–Appellee,**

v.

**Theresa A. SLYMAN and George J.**
**Slyman, Defendants–Appellants.**

No. 798, Docket 92–7788.

United States Court of Appeals,
Second Circuit.

Submitted Jan. 8, 1993.

Decided June 8, 1993.

Carl E. Worboys, Syracuse, NY (Bogart & Associates, of counsel), for defendants-appellants.

Paul K. Stecker, Buffalo, NY (Charles R. Chase, Phillips, Lytle, Hitchcock, Blaine & Haber, of counsel), for plaintiff-appellee.

Before: PRATT and MAHONEY, Circuit Judges, and FRIEDMAN, Circuit Judge for the United States Court of Appeals for the Federal Circuit.

GEORGE C. PRATT, Circuit Judge:

Theresa and George Slyman ("Slymans") appeal from a judgment of the District Court of the Western District of New York, William M. Skretny, *Judge,* granting summary judgment in favor of Marine Midland Bank ("Marine"). The district court accorded a res judicata effect to a prior Ohio judgment entered against the Slymans' wholly owned corporation, Accurate Die Casting Company ("Accurate"), to bar the Slymans' affirmative defense and counterclaims. Because we find that the Ohio judgment barred the affirmative defense, but not the counterclaims, we affirm in part and reverse in part.

## BACKGROUND

In order to obtain a loan from Marine in 1980, two corporations, one owned by George Slyman and one owned by Theresa Slyman, merged to form Accurate. As a result of the merger, Theresa and George Slyman together owned all of Accurate's stock, George Slyman was the chairman of Accurate's board of directors, and Accurate became the owner of plants in Fayetteville, New York; Cleveland, Ohio; and Rockford, Illinois. After the merger, Marine set up for Accurate both a fixed-term loan and a revolving credit line.

Three years later, in 1983, the Slymans purchased the Fayetteville plant from Accurate and leased the space back to the corporation. Part of the financing for this transaction was through ITT Commercial Credit ("ITT"). The Slymans used the rental payments from Accurate to make their mortgage payments to ITT.

In October 1985 Accurate filed a Chapter 11 petition in the United States Bankruptcy Court for the Northern District of Ohio. This filing prompted a post-petition loan agreement with Marine that was secured by Accurate's collateral, guaranteed by the Slymans, and approved by the bankruptcy court. Under the terms of the agreement, Marine obtained partial relief from the automatic stay, 11 U.S.C. § 362, to enable it to conduct a creditor's sale of the assets located at Accurate's Cleveland plant.

During the Chapter 11 period, Marine supervised Accurate's finances closely, which included approving or disapproving Accurate's proposed payments to creditors. Through this process, Marine prevented Accurate from making its rental payments to the Slymans and from paying certain real property taxes. As a result, the Slymans were unable to cover their mortgage payments to ITT which, in turn, foreclosed the mortgage and took possession of the Fay-

etteville plant in 1988. This caused the Slymans to suffer a loss of $2.1 million in equity.

Marine then moved in the bankruptcy court to terminate its loans to Accurate and for further relief from the automatic stay so it could pursue its remedies against Accurate. The bankruptcy court granted the motion in early February 1988, and also granted Marine the right to immediate repossession of the collateral securing Accurate's loans unless Accurate fulfilled certain conditions. When Accurate failed to satisfy those terms, it entered into an agreement with Marine providing for a private sale of Accurate's inventory to Precision Die Casting Company and a public sale of Accurate's machinery and other assets. After the sales, Marine sued Accurate in the Ashland County Court of Common Pleas in Ohio to recover the balance due under the loan agreement. The Ohio court granted summary judgment in favor of Marine and ordered foreclosure and sale of Ohio real estate that Marine held by a collateral mortgage. After that sale, the court found a deficiency of $124,818.66.

In May 1989 Marine instituted the present action against the Slymans in the District Court for the Western District of New York, seeking to recover on their personal guarantees of Marine's loan to Accurate. Marine's complaint demanded judgment in the amount of $138,411.82, plus interest, attorney's fees, and costs. In their answer, the Slymans raised two affirmative defenses and three counterclaims. Only one of the affirmative defenses was pursued; in it the Slymans claimed that Marine had not disposed of Accurate's collateral in a "reasonable commercial manner" as required by the postpetition loan agreement. The counterclaims alleged that the Slymans had been personally injured by: (1) Marine's refusal to allow Accurate to make its rental payments, (2) Marine's refusal to allow Accurate to pay tax bills for which the Slymans were personally liable, and (3) Marine's interference in Accurate's contractual and business relationships.

The district court granted Marine's motion for summary judgment, holding that principles of res judicata barred the Slymans from asserting their affirmative defense and counterclaims. Because the court found that the Slymans were in privity with Accurate, it held that they were bound by Marine's Ohio judgment against Accurate. More specifically, as to the affirmative defense, the court found that the Slymans' "affirmative defense relating to Accurate's indebtedness to plaintiff[ ] has already been decided by the Ohio court. This defense could have been raised in the Ohio action and was not." As to the three counterclaims, the court found they were compulsory counterclaims that should have been raised in the Ohio action. Because it concluded that all issues sought to be raised by the Slymans were precluded by the Ohio judgment against Accurate, the district court granted summary judgment to Marine.

On appeal the Slymans argue that the district court improperly invoked res judicata to bar their defense and counterclaims. They argue that they were not in privity with Accurate, that the counterclaims involve issues not previously decided in the Ohio judgment, and that the counterclaims are not compulsory under Ohio law. Marine responds, first, that the Slymans' appeal should be dismissed as untimely, and, addressing the merits, that the district court properly applied res judicata to the present action.

## DISCUSSION

### A. Timeliness of Appeal.

Marine argues that the Slymans' appeal should be dismissed under rule 4(a) because it was not filed within thirty days of the final judgment. Fed.R.App.P. 4(a). Rule 4(a) provides that "notice of appeal * * * shall be filed * * * within 30 days after the date of entry of the judgment or order appealed from" unless a timely motion is made under rule 50(b), 52(b), or 59 of the Federal Rules of Civil Procedure. Fed. R.App.P. 4(a)(1), 4(a)(4).

Due to the peculiar facts of this case, the date of the district court's final judgment is not clearly evident. The court first entered judgment on June 15, 1992. However, ten days later Marine and the Slymans filed a stipulation to amend the judgment, and the stipulation was approved by order of the court entered on June 25, 1992. The Slymans' notice of appeal, filed on July 20, 1992,

was not within thirty days of the original judgment, but was within thirty days of the amendment.

While the stipulation was not formally styled as a motion under rule 59, it may appropriately be treated as one. Rule 59(e) provides: "A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." Fed. R.Civ.P. 59(e). In this case, the district court revised the final judgment, not of its own accord, but because the parties had stipulated to the changes. The stipulation, therefore, operated as a consent motion, and since it was filed within the time limit imposed by rule 59(e) and served to amend the final judgment, it was functionally equivalent to a rule 59(e) motion.

A timely filing of a rule 59(e) motion tolls the time for appeal until entry of an order denying or granting the motion. Fed. R.App.P. 4(a)(4). Since an order amending the judgment pursuant to the timely filed stipulation was entered on July 6, 1992, the Slymans' notice of appeal, filed within thirty days thereafter, was also timely.

B. *Merits of Summary Judgment.*

■ We review grants of summary judgment *de novo. Healy v. Rich Products Corp.,* 981 F.2d 68, 72 (2d Cir.1992). To examine whether the doctrine of res judicata was properly invoked by the district court, we must determine the preclusive effect of the Ohio state court judgment, a determination that is controlled by Ohio law. 28 U.S.C. § 1738; *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 481–82, 102 S.Ct. 1883, 1897–98, 72 L.Ed.2d 262 (1982); *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 375, 105 S.Ct. 1327, 1329, 84 L.Ed.2d 274 (1985).

In Ohio a final judgment on the merits rendered by a court of competent jurisdiction is conclusive of rights, questions, and facts in issue as to the parties and their privies, and is a complete bar to any subsequent action upon the same cause of action between the parties and those in privity with them. *Norwood v. McDonald,* 142 Ohio St. 299, 52 N.E.2d 67, 71 (1943). Res judicata in Ohio involves two facets: claim preclusion and is-

sue preclusion. Claim preclusion prevents relitigation of the same claim or cause of action between the parties. *See generally Norwood,* 52 N.E.2d at 71. Issue preclusion, also called collateral estoppel, precludes relitigation of an issue that has been "actually litigated and determined" in a prior action. *Kelly v. Georgia–Pacific Corp.,* 46 Ohio St.3d 134, 545 N.E.2d 1244, 1248 (1989) (quoting *State ex rel. Ohio Water Service Co. v. Mahoning Valley Sanitary Dist.,* 169 Ohio St. 31, 157 N.E.2d 116, 118 (1959)); *Johnson's Island, Inc. v. Board of Township Trustees,* 69 Ohio St.2d 241, 431 N.E.2d 672, 674 (1982).

■ Both facets of res judicata apply only to parties to the original action and those in privity with them. *Whitehead v. General Telephone Co.,* 20 Ohio St.2d 108, 254 N.E.2d 10, 13 (1969) (both facets require "identity of parties or their privies"); *Duncan v. Peck,* 752 F.2d 1135 (6th Cir.1985) (claim preclusion bars relitigation by parties or privies); *Goodson v. McDonough Power Equipment, Inc.,* 2 Ohio St.3d 193, 443 N.E.2d 978, 987 (1983) (collateral estoppel applies only to parties and their privies). The Slymans were not parties to the Ohio action. Therefore, res judicata could apply only if the Slymans were found to be in privity with Accurate. The Slymans contend that they were not in privity with Accurate because they did not "control" the prior litigation in furtherance of their own interests.

■ We agree with the district court's conclusion that the Slymans were in privity with Accurate. Judge Skretny noted that "control over a previous action is not a necessary element of privity." 1992 WL 151895, at *4 (W.D.N.Y. June 9, 1992). Privity requires "identity of interest through succession to the same property rights involved in the prior litigation." *West American Ins. Co. v. Humphrey,* 65 Ohio App.2d 188, 417 N.E.2d 112, 114 (1979). As officers, directors, sole shareholders, and guarantors of Accurate, the Slymans' interests in litigating Accurate's indebtedness in the Ohio action were sufficiently identical to establish privity.

■ We next examine whether, as parties in privity with Accurate, the Slymans' affir-

mative defense and counterclaims were, under either facet of res judicata, barred by the Ohio judgment against Accurate. Claim preclusion "bars relitigation of those claims upon which a final judgment on the merits has been rendered, * * * as well as those claims which might have been litigated in the first lawsuit and which arise from the same subject matter and constitute the same cause of action." *Osborn v. Ashland County Board of Alcohol, Drug Addiction and Mental Health Serv.*, 979 F.2d 1131, 1133 (6th Cir.1992) (per curiam) (citations omitted); *Kelly*, 69 Ohio St.2d 241, 545 N.E.2d at 1248; *Rogers v. Whitehall*, 25 Ohio St.3d 67, 494 N.E.2d 1387, 1388 (1986). Correspondingly, it extends to "defenses which, although not raised, could have been raised in the prior action." *Johnson's Island, Inc.*, 69 Ohio St.2d 241, 431 N.E.2d at 675.

The Slymans' affirmative defense alleges that Marine "failed to dispose of the collateral belonging to Accurate * * * in a reasonable commercial manner." Judge Skretny concluded that because the Slymans' defense was available to Accurate in the Ohio action, the Slymans were precluded from raising it. 1992 WL 151895, at *4–*6. We agree essentially with Judge Skretny's analysis with respect to the affirmative defense and find no need to discuss it further in this opinion.

■ We disagree, however, with Judge Skretny's conclusion that the counterclaims were compulsory counterclaims that should have been raised in the Ohio action. The Slymans' counterclaims allege that they were *personally* injured by Marine's handling of Accurate's financial and business affairs, issues that could not have been raised by Accurate. In the Ohio action, Accurate was trying to maintain its viability as a corporate entity. Through their counterclaims, the Slymans seek to recover for personal damages they suffered as a result of Marine's alleged misconduct in managing Accurate's affairs. Claim preclusion applies when, in the prior action, the merits of the claim were either actually or could have been adjudicated. *See Osborn*, 979 F.2d at 1133. Simply because the Slymans are now deemed to have been in privity with Accurate did not make them parties to the action against Ac-

curate, nor did the privity operate in reverse so as to give Accurate standing to assert as counterclaims the Slymans' personal claims against Marine. The Slymans' counterclaims were not decided in the Ohio action, nor could they have been raised there. Thus, claim preclusion does not bar their assertion here.

■ In addition, the second facet of res judicata, issue preclusion or collateral estoppel, does not bar the Slymans' counterclaims. To invoke collateral estoppel successfully, Marine must establish that the identical issues were "actually litigated, directly determined, and essential to the judgment" in the Ohio action. *See Goodson*, 443 N.E.2d at 985, 987 (citing 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* §§ 4416–4417 (1981)); *McAdoo v. Dallas Corp.*, 932 F.2d 522, 525 (6th Cir.1991); *Norwood*, 52 N.E.2d at 71. The Slymans' counterclaims require inquiry into whether the manner in which Marine controlled Accurate's finances injured the Slymans personally. Since the impact of Marine's actions upon the Slymans as individuals was not actually litigated, directly determined, or essential to the prior litigation, collateral estoppel does not preclude their counterclaims.

Because the counterclaims involve issues that were neither actually litigated nor could have been litigated in the Ohio action, we reverse the district court's grant of summary judgment with respect to the counterclaims and remand for further proceedings. We express no view, however, as to the merit of any counterclaim.

## CONCLUSION

The district court was correct in holding that the Slymans' affirmative defense was barred by res judicata. However, neither res judicata nor collateral estoppel precludes litigation of the counterclaims.

Affirmed in part; reversed and remanded in part.