*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0103p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

No. 04-3204

TWIN CITY FIRE INSURANCE COMPANY,
                                    *Plaintiff-Appellee,*

v.

MICHELE ADKINS et al.,
                                    *Defendants-Appellants.*

No. 04-3205

MICHELE ADKINS et al.,
                                    *Plaintiffs-Appellants,*

v.

TWIN CITY FIRE INSURANCE COMPANY; INSURANCE
COMPANY OF NORTH AMERICA; FIRST STATE INSURANCE
COMPANY,
                                    *Defendants-Appellees.*

Nos. 04-3204/3205

>

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
Nos. 02-00446; 02-00512—Gregory L. Frost, District Judge.

Argued: January 27, 2005

Decided and Filed: March 3, 2005

Before: MERRITT, MOORE, and GILMAN, Circuit Judges.

———————

## COUNSEL

**ARGUED:** Gregory K. Pratt, PRATT & SINGER, Middletown, Ohio, for Appellants. Richard M. Garner, DAVIS & YOUNG, Cleveland, Ohio, David S. Bloomfield, Jr., PORTER, WRIGHT, MORRIS & ARTHUR, Columbus, Ohio, Bruce M. Allman, THOMPSON HINE, Cincinnati, Ohio, for Appellees. **ON BRIEF:** Gregory K. Pratt, PRATT & SINGER, Middletown, Ohio, for Appellants. Richard M. Garner, DAVIS & YOUNG, Cleveland, Ohio, David S. Bloomfield, Jr., John Kenneth Thien, PORTER, WRIGHT,

MORRIS & ARTHUR, Columbus, Ohio, Bruce M. Allman, Matthew C. Curran, THOMPSON HINE, Cincinnati, Ohio, for Appellees.

————————————

## OPINION

————————————

RONALD LEE GILMAN, Circuit Judge.  Michele Adkins was involved in an automobile accident in 1983 that seriously injured her and her unborn daughter.  At the time of the accident, Michele's husband was employed by a subsidiary of the American Electric Power Company.  American Electric had three insurance policies then in force that provided for uninsured and underinsured motorist (UM/UIM) coverage.  The Adkinses brought the present action seeking coverage under these policies.  Exercising its diversity jurisdiction, the district court concluded that the Ohio Supreme Court's decision in *Westfield Insurance Co. v. Galatis*, 797 N.E.2d 1256 (Ohio 2003), was controlling, and granted summary judgment in favor of the insurers.

On appeal, the Adkinses argue that *Galatis* is void *ab initio* and therefore not controlling because of an alleged lack of subject matter jurisdiction and because the decision violated the Galatises' due process rights.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

### A.    Factual background

In January of 1983, Michele Adkins was involved in a head-on automobile accident in Licking County, Ohio.  She was seriously injured—sustaining fractures to her femur, knee, arm, and face, as well as extensive abdominal injuries—when a car driven by Lori Deckard crossed the center line and collided with her car.  At the time of the accident, Michele was eight months pregnant with Lindsay Adkins.  Following the accident, Lindsay was born prematurely and now suffers from cerebral palsy, microcephaly, mental retardation, and other related handicaps.  The Adkinses maintain that Lindsay's condition is a direct and proximate result of the accident.

Michele was not at fault in the collision.  She later settled her claims with Deckard and Deckard's insurer in return for a $50,000 payment, the limit of Deckard's automobile liability insurance policy.  Michele and her husband, Charles Adkins, also had an automobile insurance policy in effect with the J.C. Penney Casualty Company at the time of the accident.  That policy provided for coverage of up to $12,500 for uninsured motorists and up to $25,000 for underinsured motorists.  After litigation against J.C. Penney, wherein the Adkinses had alleged that it had acted in bad faith, J.C. Penney paid the Adkinses $28,000 for the settlement of all claims.

At the time of Michele's accident, her husband, Charles, was employed by a subsidiary of American Electric Power Company.  American Electric was the named insured on several automobile insurance policies in effect during this time that provided UM/UIM coverage.  The primary policy, obtained through the Insurance Company of North America (INA), provided for UM/UIM motorist coverage in the amount of $25,000.  American Electric was also covered by two umbrella insurance policies.  The first, with Twin City Fire Insurance Company, provided for automobile liability coverage with a limit of $5 million in excess of the INA policy.  Another, from First State Insurance Company, also provided for additional coverage in an amount not specified in the record.

### B.    Procedural background

In 1999, the Ohio Supreme Court drastically altered Ohio insurance law with its decision in *Scott-Pontzer v. Liberty Mutual Fire Insurance Co.*, 710 N.E.2d 1116 (Ohio 1999).  The court ruled that Ohio law

permitted the employees of corporate insureds to receive UM/UIM coverage under the provisions of their employers' insurance polices even if, at the time of their accidents, the employees were driving their own vehicles and acting outside the scope of their employment. Extending this principle in *Ezawa v. Yasuda Fire & Marine Insurance Co. of America*, 715 N.E.2d 1142 (Ohio 1999), the Ohio Supreme Court held that the UM/UIM coverage was also available to the family members of a corporation's employees.

Relying on the Ohio Supreme Court's decisions in *Scott-Pontzer* and *Ezawa*, the Adkinses brought this action in Ohio state court in June of 2001, over 18 years after Michele's accident. The case was removed to the United States District Court for the Southern District of Ohio and was joined with a declaratory judgment action that had been previously filed in federal court by Twin City that raised essentially the same issues. All parties filed for summary judgment. While these motions were pending, the Ohio Supreme Court issued its decision in *Westfield Insurance Co. v. Galatis*, 797 N.E.2d 1256 (Ohio 2003). The court in *Galatis* overruled *Ezawa* and limited *Scott-Pontzer*. After reviewing supplemental briefs from the parties, the district court granted summary judgment in favor of the insurers on the basis of *Galatis*, thereby precluding the recovery sought by the Adkinses. This timely appeal followed.

## II.  ANALYSIS

### A.      Standard of review

The district court's grant of summary judgment is reviewed de novo. *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 629 (6th Cir. 2002). Summary judgment is proper where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the district court must construe all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### B.      The district court did not err in concluding that the *Galatis* decision was controlling and in granting summary judgment for the insurers on that basis

A federal court in Ohio exercising its diversity-of-citizenship jurisdiction must apply the substantive law as determined by the Ohio Supreme Court. *See John Hancock Fin. Servs. v. Old Kent Bank*, 346 F.3d 727, 733 (6th Cir. 2003) ("Because jurisdiction in this case is based upon diversity of citizenship between [the parties], we apply state law in accordance with the then controlling decision of the highest state court.") (quotation marks omitted). The district court in the present action concluded, and the parties agree, that this dispute is governed by Ohio law.

In *Westfield Insurance Co. v. Galatis*, 797 N.E.2d 1256 (Ohio 2003), the Ohio Supreme Court was presented with a fact pattern analogous to the one before us: a father and mother sought a recovery on behalf of their dependent child who was killed in an automobile accident, with coverage claimed under the UM/UIM policies previously issued to their employers. Expressly overruling its decision in *Ezawa v. Yasuda Fire & Marine Insurance Co. of America*, 715 N.E.2d 1142 (Ohio 1999), and limiting its decision in *Scott-Pontzer v. Liberty Mutual Fire Insurance Co.*, 710 F.E.2d 1116 (Ohio 1999), the court held that "a policy of insurance that names a corporation as an insured for uninsured or underinsured motorist coverage covers a loss sustained by an employee of the corporation only if the loss occurs within the course and scope of employment . . . [and such a policy] does not extend insurance coverage to a family member of an employee of the corporation . . . ." *Galatis*, 797 N.E.2d at 1271.

If *Galatis* is held to be the controlling authority in the present action, then the district court was unquestionably correct in granting summary judgment. *See Henry v. Wausau Bus. Ins. Co.*, 351 F.3d 710, 713 (6th Cir. 2003) (applying *Galatis* after observing that "[i]n determining questions of Ohio state law, the court must follow the controlling decisions of the Ohio Supreme Court."). By failing to argue to the

contrary in their brief, the Adkinses impliedly concede the correctness of this conclusion. They state that "[t]he lynchpin, if not the sole authority for the District Court's decision herein, is *Galatis*. If *Galatis* is void *ab initio*, then the District Court's decision herein is erroneous."

### 1. The district court erred in failing to make findings regarding the validity of the *Galatis* decision

On appeal, the Adkinses' primary contention is that the *Galatis* decision is not controlling authority because the decision was rendered without subject matter jurisdiction and in violation of the Galatises' due process rights. They frame this argument as an attempt to "collaterally challenge" the Ohio Supreme Court's decision in *Galatis*. The Adkinses insist that their collateral attack in federal court on the *Galatis* decision is permitted through a number of exceptions to the *Rooker/Feldman* doctrine. This federal jurisdictional doctrine holds that the lower federal courts "do not have jurisdiction . . . over challenges to state-court decisions . . . even if those challenges allege that the state court's action was unconstitutional. Review of those decisions may be had only in [the United States Supreme] Court." *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983).

This doctrine is inapposite in the present case, however, because *Rooker/Feldman* "does not apply to bar a suit in federal court brought by a party that was not a party in the preceding action in state court." *United States v. Owens*, 54 F.3d 271, 274 (6th Cir. 1995); *see also Hood v. Keller*, 341 F.3d 593, 597 (6th Cir. 2003) ("The purpose of the doctrine is to prevent a party losing in state court . . . from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.") (quotation marks omitted).

Acknowledging that the *Rooker/Feldman* doctrine is inapplicable to the present action, the insurers insist that the Adkinses' claim is nevertheless barred because the Adkinses do not have standing to mount a collateral attack on behalf of the *Galatis* appellants. The Adkinses, however, do not challenge the *Galatis* decision simply to vindicate the interests of the appellants in that case, despite repeatedly arguing in their brief that the decision in *Galatis* "was procured by conduct which deprived the *appellants therein* of their day in court." (Emphasis added.) Were that their only stake in the present litigation, the Adkinses would be without the kind of personal injury necessary to establish standing. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) (stating that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties").

Instead, the Adkinses have standing to contest the validity of the Ohio Supreme Court's ruling in *Galatis* because the district court relied on the decision in granting summary judgment in favor of the insurers in the present action. The district court would not have felt "duty-bound to accept the holdings of *Galatis*" if it had concluded that *Galatis* was void *ab initio*, as was by urged by the Adkinses, possibly resulting in a different disposition of the present case. Because the Adkinses argue that they were harmed when the district court applied a purportedly void decision as controlling precedent, they have alleged an injury sufficient to confer standing. This is true regardless of whether the *Galatis* decision is in fact void *ab initio*. *See Warth*, 422 U.S. at 500 (stating that "standing in no way depends on the merits of the plaintiff's contention").

Although acknowledging the Adkinses' "argument that the *Galatis* majority decided issues that were either not before the Court as a certified conflict, or at best were only implicitly before the Court," the district court declined to rule on the Adkinses' claim that *Galatis* was void *ab initio*. The district court offered two justifications for its decision: (1) that the validity of *Galatis* had already been recognized by published Sixth Circuit decisions, and (2) that "the highest state court has nonetheless spoken conclusively on an issue of state law" and published a ruling that the district court felt "duty-bound to accept."

Since it was issued, the *Galatis* decision has been cited in several decisions of this court. *See, e.g., Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 626 n.1 (6th Cir. 2004) (noting that "[t]he Ohio Supreme

Court . . . drastically reduced the scope of *Scott-Pontzer* coverage" in the *Galatis* decision).  The district court explicitly relied upon one of these decisions, *Henry v. Wausau Business Insurance Co.*, 351 F.3d 710, 713 (6th Cir. 2003), to conclude that the validity of *Galatis* had been conclusively established in this circuit.

In none of the Sixth Circuit cases that have referenced *Galatis*, however, was the court presented with the argument advanced by the Adkinses in the present litigation; namely, that the *Galatis* decision should be accorded no precedential weight because it was void *ab initio*.  Had any of the decisions in these published cases addressed this question, we would be bound by the resulting precedent.  *See Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) ("A panel of this Court cannot overrule the decision of another panel.").  Because this issue has not yet been decided, however, the district court erred in relying on *Henry* to support its refusal to explore the validity of the *Galatis* decision.

In failing to rule on the Adkinses' argument, the district court also asserted that it lacked the authority to question *Galatis*, stating that "[i]t is not the purview or inclination of this Court to decide that state supreme court decisions . . . are void *ab initio* as Plaintiffs ask the Court to do."   The district court correctly noted that, as a general matter, the "[f]ederal courts must give the same effect to a state court judgment that would be given by a court of the state in which the judgment was rendered."  *Hosp. Underwriting Group, Inc. v. Summit Health, Ltd*, 63 F.3d 486, 494 (6th Cir. 1995).  But there is an important exception to this rule for state-court rulings made in the absence of subject matter jurisdiction or due process.  *See Underwriters Nat'l Assurance Co., v. N.C. Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 705 (1982) ("If that court did not have jurisdiction over the subject matter or the relevant parties, full faith and credit need not be given."); *Kremer v. Chem. Constr. Corp.* 456 U.S. 461, 482 (1982) ("The State must, however, satisfy the applicable requirements of the Due Process Clause.  A State may not grant preclusive effect in its own courts to a constitutionally infirm judgment, and other state and federal courts are not required to accord full faith and credit to such a judgment.").

Where a federal court finds that a state-court decision was rendered in the absence of subject matter jurisdiction or tainted by due process violations, it may declare the state court's judgment void *ab initio* and refuse to give the decision effect in the federal proceeding.  *Int'l Longshoremen's Ass'n v. Davis*, 476 U.S. 380, 392 (1986) (holding that where "a state court . . . ha[s] no subject matter jurisdiction to adjudicate the issue . . . , any judgment issued by the state court will be *void ab initio*") (emphasis in original); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) ("A judgment rendered in violation of due process is void in the rendering State and is not entitled to full faith and credit elsewhere.").

Parties seeking to challenge a federal court's reliance on an invalid state-court judgment may properly frame their argument as a collateral attack upon the prior decision.  *See Kalb v. Feuerstein*, 308 U.S. 433, 438 (1940) (holding that where a state court had ruled without jurisdiction, its decision was "void, and subject to collateral attack" in the subsequent proceeding); *Hosp. Underwriting Group, Inc.*, 63 F.3d at 495 (observing that a state-court judgment could be found "void" and "collaterally attacked . . . if the court lacked subject matter jurisdiction over the case, personal jurisdiction over the parties or jurisdiction to render the particular judgment given, or . . . the judgment was the product of extrinsic fraud").

The district court therefore erred when it stated that it lacked the authority to rule on the Adkinses' claim that the *Galatis* decision was void *ab initio* and without precedential weight.   Under these circumstances, we could elect to remand this case to the district court and direct it to rule on the validity of the Ohio Supreme Court's decision.  But in a case like the present, where we have before us all of the necessary facts and the legal questions have been fully addressed in the parties' briefs, we believe that judicial resources would be better conserved if we proceed to rule on the Adkinses' claim.  *See Fair Hous. Advocates Ass'n v. City of Richmond Heights*, 209 F.3d 626, 635-36 (6th Cir. 2000) (reaching the merits where there was "ample evidence presented in the record" that resolved the legal questions in the case, "thereby rendering a remand unnecessary").

### 2.    *The district court's error was harmless because the decision of the Ohio Supreme Court in Galatis was not void ab initio*

The Adkinses allege that the "insurance company appellees" in *Galatis* orchestrated an "ambush" that "deprived the appellants therein" of a judgment free from jurisdictional defects and due process violations. *Galatis* was certified to the Ohio Supreme Court because of a conflict between two divisions of the Ohio Courts of Appeals on a narrow coverage question. Article IV, Section 3(B)(4) of the Ohio Constitution states that "[w]henever the judges of a court of appeals find that a judgment upon which they have agreed is in conflict with a judgment . . . by any other court of appeals of the state, the judges shall certify the record of the case to the supreme court for review and final determination." Because the question of the continued validity of *Scott-Pontzer* and *Ezawa* was not the issue certified to the Ohio Supreme Court, the Adkinses argue that the court acted outside the jurisdiction conferred upon it by the Ohio Constitution when it overruled those cases. They contend that the decision in *Galatis* was therefore void *ab initio* for want of subject matter jurisdiction. The case of *Musisca v. Massillon Community Hospital*, 635 N.E.2d 358, 359 (Ohio 1994), is cited by the Adkinses in support of their argument, where the court considered only the certified issue and refused to consider "several issues not properly before [the court]."

We find this argument unpersuasive. In Ohio, "[c]ertification of the record of the case to the Supreme Court, because of a conflict between judgments of the Courts of Appeals upon any question, brings the entire case, not merely the certified question, before th[e] court for review." *Brown v. Borchers Ford, Inc.*, 361 N.E.2d 1063, 1064 (Ohio 1977). Neither of the two cases cited by the Adkinses calls into question this well-settled principle. One is *Musisca*, 635 N.E.2d at 359, where the court declined to hear an issue that had not been certified only because the "appellee ha[d] not preserved that issue for . . . review." The other is *State v. Edmondson*, 750 N.E.2d 587 (Ohio 2001), where the court did not even address this issue. An admonition of the United States Supreme Court "that a judgment by a court of competent jurisdiction bears a presumption of regularity and is not thereafter subject to collateral attack" further reinforces the conclusion that the Ohio Supreme Court was acting within its jurisdiction when it decided *Galatis*. *See Kalb v. Feuerstein*, 308 U.S. 433, 438 (1940).

But the Adkinses also rely on the Ohio Supreme Court's Rules of Practice, which state that, before hearing a case, the court "will issue an order . . . identifying those issues raised in the case that will be considered by the Supreme Court on appeal, and ordering those issues to be briefed." Ohio S.Ct. Prac. R. IV § 2(C). Parties before the court are instructed to "brief only the issues identified in the order of the Supreme Court as issues to be considered on appeal." Ohio S.Ct. Prac. R. IV § 3(B).

Because the continued validity of the *Scott-Pontzer* and *Ezawa* cases was not identified as an issue in the Ohio Supreme Court's order in the *Galatis* case, the plaintiffs therein did not address the issue in their initial briefing to the court. According to the Adkinses, the insurers in *Galatis* chose to "devote essentially their entire brief to the issue of the continued validity of *Scott-Pontzer*." The *Galatis* plaintiffs were left with only their 20-page reply brief in which to respond to these arguments. This prompted one dissenting justice to accuse the insurance companies of having carried out an "ambush." *Galatis*, 797 N.E.2d at 1274 (Resnick, J., dissenting).

The Adkinses argue that, in neglecting to adhere to its own rules, the Ohio Supreme Court deprived the *Galatis* plaintiffs of a full and fair opportunity to be heard, and that this constituted a violation of due process. *See City of Los Angeles v. David*, 538 U.S. 715, 717 (2003) (finding that a "fundamental requirement of due process [is] the opportunity to be heard at a meaningful time and in a meaningful manner") (quotation marks omitted). On this basis, they asked the district court to declare the *Galatis* decision void *ab initio* and to refuse to accord it precedential value. *See Osborn v. Ashland County Bd. of Alcohol, Drug Addiction & Mental Health Servs.*, 979 F.2d 1131, 1134 (6th Cir. 1992) (stating that "[a] judgment . . . is void . . . for failure to meet the minimal procedural requirements of the Fourteenth Amendment's Due Process Clause [and] is not subject to the Full Faith and Credit Act").

A review of the Ohio Supreme Court's lengthy opinion in *Galatis*, however, reveals that the court considered but ultimately dismissed a number of arguments for retaining *Scott-Pontzer* and *Ezawa*. Although the dissenting justices objected to the majority's treatment of the case, they did not go so far as to claim that the court had violated due process. And none of the dissenting justices suggested that the decision would not be binding precedent on future litigants. Being limited to a 20-page reply brief falls far short of the kind of due process violation that will permit a court to declare the judgment of another court void *ab initio*. *Cf. In re Sun Valley Foods Co. v. Detroit Marine Terminals, Inc.*, 801 F.2d 186, 189 (6th Cir. 1986) (finding that "[a] federal court may entertain a collateral attack on a state court judgment which is alleged to have been procured through fraud, deception, accident, . . . mistake" or other gross procedural error) (quotation marks omitted). *See also Kremer v. Chem. Constr. Corp.* 456 U.S. 461, 483 (1982) ("We must bear in mind that no single model of procedural fairness, let alone a particular form of procedure, is dictated by the Due Process Clause. The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.") (citations and quotation marks omitted).

Because of our conclusion that the *Galatis* decision is not void *ab initio*, the district court's reliance on the Ohio case in granting summary judgment, without making explicit findings regarding its validity, constituted only harmless error. *See* Fed. R. Civ. P. 61 (stating that an error is "harmless" where it "does not affect the substantial rights of the parties"). Moreover, even if *Galatis* was tainted by a jurisdictional defect, subsequent Ohio Supreme Court and Ohio Courts of Appeals decisions have applied the reasoning and holding of *Galatis*, clearly establishing that the recovery sought by the Adkinses is unavailable under Ohio law. Despite the Adkinses' dissatisfaction with the *Galatis* ruling and its effect on their action, the district court correctly applied the Ohio Supreme Court's decision. *See Hosp. Underwriting Group, Inc. v. Summit Health, Ltd.*, 63 F.3d 486, 493 (6th Cir. 1995) ("A federal district court in a diversity case is not free to ignore applicable state law, even if the law is unpopular or represents a minority view, especially where the state's . . . supreme court continue[s] to approve of the law.").

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.