*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0287P (6th Cir.)
File Name: 04a0287p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MASCO CORPORATION,
    *Plaintiff-Appellee,*

*v.*

ZURICH AMERICAN
INSURANCE COMPANY,
    *Defendant-Appellant,*

NEAR NORTH INSURANCE
AGENCY, INC., et al.,
    *Defendants.*

No. 03-3071

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 02-00988—James S. Gallas, Magistrate Judge.

Argued: April 27, 2004

Decided and Filed: August 31, 2004

Before: MARTIN and ROGERS, Circuit Judges; BELL,
Chief District Judge.[*]

---

[*] The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan, sitting by designation.

---

## COUNSEL

**ARGUED:** Joseph A. Hinkhouse, LORD, BISSELL & BROOK, Chicago, Illinois, for Appellant. Marc A. Sanchez, FRANTZ WARD, Cleveland, Ohio, for Appellee. **ON BRIEF:** Damon N. Vocke, LORD, BISSELL & BROOK, Chicago, Illinois, Hugh D. Berkson, HERMANN, CAHN & SCHNEIDER, Cleveland, Ohio, for Appellant. Marc A. Sanchez, FRANTZ WARD, Cleveland, Ohio, for Appellee.

ROGERS, J., delivered the opinion of the court, in which BELL, D. J., joined. MARTIN, J. (pp. 12-18), delivered a separate dissenting opinion.

---

## OPINION

---

ROGERS, Circuit Judge. The district court in this case refused to give effect to a broad arbitration clause in an insurance policy, where the underlying dispute between the parties revolved around policy coverage that neither party intended, but that was imposed on the contract by law as determined by subsequent Ohio Supreme Court opinions. Because the dispute nonetheless falls within the ambit of the arbitration agreement, we reverse.

Zurich American Insurance Company ("Zurich"), through its agent, Near North Insurance Agency, Inc. ("Near North"), sold to Masco Corporation ("Masco") two commercial automobile insurance policies, one effective June 30, 1997, to June 30, 1998, and a second, renewal policy, effective June 30, 1998, to June 30, 1999. The two policies included a deductible agreement, consisting of a basic agreement and a

set of specifications. As part of the deductible agreement, Zurich agreed to pay and handle the claims made under the policies, and Masco agreed to pay Zurich a $500,000 deductible for claims made under the policies. The deductible agreement included an arbitration clause reading, "Any dispute arising out of the interpretation, performance or alleged breach of this agreement, shall be submitted to arbitration . . . ."

In negotiating the purchase of automobile insurance, Masco specifically instructed Near North that it wished to purchase policies that contained no uninsured/underinsured-motorist ("UM/UIM") coverage. Near North and Zurich provided Masco with forms that all parties thought rejected UM/UIM coverage. At the time the polices were purchased and the deductible agreement was entered into, both parties to this appeal thought that their contract did not include UM/UIM coverage.

Later events, however, rendered the parties' rejection of UM/UIM coverage ineffective. The Ohio Supreme Court in *Scott-Pontzer v. Liberty Mutual Fire Insurance Co.*, 710 N.E.2d 1116 (Ohio 1999), and *Linko v. Indemnity Insurance Co. of North America*, 739 N.E.2d 338 (Ohio 2000), interpreted § 3937.18 of the Ohio Revised Code to extend UM/UIM coverage to almost all corporations buying automobile insurance unless they expressly rejected the coverage in a very precise way. Both Zurich and Masco agree that the manner in which they rejected possible UM/UIM coverage, although arguably valid at the time of contracting, did not satisfy the *Linko* requirements. It is thus uncontroverted that a new burden of coverage arose flowing from Zurich to Masco and those affiliated with Masco.[1]

---

[1] The Ohio Supreme Court has since drastically reduced the scope of *Scott-Pontzer* coverage. *See Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256 (Ohio 2003).

Zurich has paid a pair of UM/UIM claims made against the policies. On March 11, 1999, Natalie Ruska, the daughter of an employee of a Masco subsidiary, was killed in an automobile accident. Ms. Ruska's estate sued Zurich in an Ohio state court claiming entitlement to *Scott-Pontzer* benefits. Zurich settled the suit, paying Ms. Ruska's estate approximately $700,000. Zurich then demanded payment of the $500,000 deductible from Masco.

On April 7, 1999, Linda Collins was injured in an automobile accident. At the time of the accident, Ms. Collins was a passenger in a vehicle being driven by her daughter, Rachael Collins, an employee of a Masco subsidiary. Collins sued Zurich demanding *Scott-Pontzer* benefits. At oral argument, Zurich admitted that it paid Ms. Collins at least $140,000 in *Scott-Pontzer* benefits. Masco believes that Zurich will demand payment of a deductible for the Collins claim.

Wishing to clarify its legal position, Masco filed a complaint in the Ohio Court of Common Pleas against Zurich and Near North seeking a declaration that: (a) it owed no obligation to pay deductibles for UM/UIM claims brought against Zurich, (b) if it is required to pay Zurich a deductible then Near North should indemnify it, and (c) that the deductible contained in the liability portion of the policies does not apply to UM/UIM coverage imposed by operation of law. Zurich removed the case to the federal district court, and moved to stay and compel arbitration based on the arbitration clause in the deductible agreement. The district court denied the motion to stay, holding that the "the underlying disputes in the complaint are beyond the scope" of the deductible agreement because "Masco could never have agreed to pay a deductible for coverage that would arise by operation of law years later as a result of a deficiency in the policy or waiver drafted by Zurich." *Masco Corp. v. Zurich Am. Ins. Co.*, No. 4:02 CV 0988, slip op. at 5 (N.D. Ohio Dec. 5, 2002). Zurich

timely appealed. The question of arbitrability is the sole issue on appeal.

The Federal Arbitration Act (the "FAA") manifests "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "To enforce this dictate, [the FAA] provides for a stay of proceedings when an issue is referable to arbitration and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (citing 9 U.S.C. §§ 3 & 4 ). This court reviews de novo a district court's decision whether to compel arbitration pursuant to the FAA. *Burden v. Check Into Cash of Kentucky, LLC*, 267 F.3d 483, 487 (6th Cir. 2001).

Case law amply supports arbitrability of Masco's claims against Zurich in this case. "Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch*, 315 F.3d at 624. "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25 (1983). "[T]here is a general presumption of arbitrability, and any doubts are to be resolved in favor of arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576-77 (6th Cir. 2003) (quoting *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986)). Where, as here, the arbitration clause is broad, "only an express provision excluding a specific dispute, or 'the most forceful evidence of a purpose to exclude the claim from arbitration,' will remove the dispute from consideration by the arbitrators." *Id.* at 577 (quoting *AT*

*& T Techs.*, 475 U.S. at 650). Of course, "[w]hile ambiguities in the language of the agreement should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (internal citations omitted).

Here, notwithstanding Masco's argument to the contrary, the arbitration clause in the deductible agreement was patently broad enough to cover the dispute as to whether Zurich can recover deductibles for the UM/UIM payments made under the policies. The arbitration clause encompasses "[a]ny dispute arising out of the interpretation, performance or alleged breach of [the deductible agreement]." J.A. at 66. Masco's claims against Zurich, which pray for a declaration that Masco has no obligation under the deductible agreement to pay deductibles for UM/UIM coverage, plainly fall within these spacious terms. The dispute "arises out of" the parties' conflicting "interpretation" of Masco's obligations under the deductible agreement and Masco's "alleged breach" of the deductible agreement by failing to pay deductibles for UM/UIM coverage.

Masco argues that, because the parties did not contemplate UM/UIM coverage, they could not possibly have contracted to submit disputes arising out of this coverage to arbitration. But, by its plain terms, the arbitration clause embraces any dispute arising out of the deductible agreement whether or not the parties anticipated the dispute at the time of contracting. Our task, of course, is limited to enforcing the parties' agreement as written, and we have no license to write a "foreseeability" limitation into the arbitration agreement. As the Seventh Circuit held in *Deputy v. Lehman Bros., Inc.*, 345 F.3d 494, 513 (7th Cir. 2003), "[w]hether a claim is subject to arbitration depends on the contractual language, and in this case the arbitration clause did not limit its scope to reasonably

foreseeable claims." *See also Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395-96 (6th Cir. 2003).

Masco further argues that (1) the deductible, which applies to "Masco Policies for Automobile Liability" (J.A. at 75), does not apply to UM/UIM claims, and (2) Ohio law forbids the imposition of a deductible on UM/UIM coverage created by operation of law. These arguments address the substance of the parties' dispute, not whether the dispute falls with the terms of the arbitration clause, and hence the arguments lie within the province of the arbitrator.

In essence, Masco attempts to recast its challenge to the underlying contractual liability as a challenge to the arbitrability of the dispute. While Masco denies that it is obligated by the deductible agreement to reimburse Zurich for deductible amounts that Zurich paid as a result of the imposition of UM/UIM coverage, it has no argument for making a particular challenge to the arbitration agreement. Instead, Masco's challenge is based squarely on the absence of an underlying contractual obligation. Masco argues that it never purchased UM/UIM coverage, that the deductibility obligation accordingly did not apply to such coverage, and that, in turn, it cannot be compelled to arbitrate a non-existent obligation to pay UM/UIM deductibles.

Where challenges to an arbitration clause, like those in this case, are based on disagreement regarding an underlying contractual dispute, the Supreme Court's holding in *Prima Paint Corporation v. Flood & Conklin Manufacturing Company*, 388 U.S. 395 (1967), makes clear that arbitration is required. Under *Prima Paint*, a general arbitration clause is enforceable even if it is contained in a contract that is generally asserted to be voidable, unless the basis for rescission applies specifically to the arbitration clause.

It is true that a party opposing a motion to stay and compel arbitration may argue that the arbitration clause is itself

invalid. "An arbitration agreement may be invalidated for the same reasons for which any contract may be invalidated, including forgery, unconscionability, and lack of consideration." *Fazio*, 340 F.3d at 393. In this case, Masco argues that the arbitration clause fails because it cannot apply to a contractual provision that Masco did not agree to. But, by virtue of Ohio law, the extension of UM/UIM coverage was legally deemed to be an obligation arising from the contract, and it is an issue of contract interpretation whether the deductible reimbursement requirement applied to the UM/UIM obligation. One seeking to challenge an arbitration clause must make an argument that is specific to the arbitration clause, however, and that does not simply challenge the contractual obligation to which the arbitration clause applies. *See Burden*, 267 F.3d at 491.

The dissent concludes that Masco's obligation to reimburse Zurich for the UM/UIM deductibles arose from a mutual mistake, and that the arbitration agreement with respect to that dispute was infected by the same mutual mistake. Masco's complaint contains a claim for contract reformation based on mutual mistake, but the theory was not otherwise argued by the parties, and normally this court treats an issue not raised by a party as waived. *Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 984 (6th Cir. 2000). In particular, the parties have not addressed whether, under the relevant law, a party can base a mutual mistake claim on a change in the law subsequent to the formation of the contract, given the requirement that the mistake exist at the time the contract was made. The answer appears to be no. *See In the Matter of the Liquidation of the New York Agency and Other Assets of Bank of Credit & Commerce Int'l, S.A.*, 683 N.E.2d 756, 764 (N.Y. 1997) ("The doctrine of mutual mistake requires that the mistake exist at the time the contract is negotiated."); *cf. Wheelabrator Envtl. Sys., Inc. v. Galante*, 136 F. Supp. 2d 21, 33 (D. Conn. 2001) (holding that the defendant could not base a defense of mutual mistake on a court decision rendered a year after the contract was formed); *Sheet Metal Workers*

*Local 137 v. Vic Constr. Corp.*, 825 F. Supp. 463, 467 (E.D.N.Y. 1993) (stating that a failure to determine or predict a controlling interpretation of a statute does not constitute a mistake); *Krantz v. Univ. of Kansas*, 21 P.3d 561, 567 (Kan. 2001) ("A subsequent change in the law will not justify rescission of a settlement agreement or contract on the basis of 'mistake of the law.'").

Even assuming that the mutual mistake theory might apply in this case, the argument still amounts to an attack on the underlying liability, and only derivatively on the obligation to arbitrate. Therefore, under *Prima Paint*, the general arbitration provision still applies. The existence of a mutual mistake leads at most to the conclusion that the underlying contract obligation was voidable, or subject to rescission. *Chastain v. The Robinson-Humphrey Co, Inc.*, 957 F.2d 851, 855 (11th Cir. 1992); *Gould v. Bd. of Educ. of Sewanhaka Cent. High Sch. Dist.*, 616 N.E.2d 142, 145 (N.Y. 1993); *Restatement (Second) of Contracts* § 152 (1981). In a similar situation, where the party objecting to arbitration claimed that the entire contract was fraudulently induced, the Supreme Court in *Prima Paint* nonetheless required arbitration where the fraudulent inducement did not relate specifically to the arbitration clause. The Court reasoned that a court may consider only claims concerning the validity of the arbitration clause itself, as opposed to challenges to the validity of the contract as a whole, in determining whether a valid agreement to arbitrate exists. *Prima Paint*, 388 U.S. at 402-06; *see also Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889-90 (6th Cir. 2002). The reasoning clearly extends beyond the fraudulent inducement context to cases involving other bases for rescinding a contract in toto. As the First Circuit reasoned:

> Contrary to Beneficial's assertion, the fact that its attempt to rescind the entire agreement is based on the grounds of frustration of purpose rather than on fraud in the inducement does not change applicability of the

severability doctrine. The teaching of *Prima Paint* is that a federal court must not remove from the arbitrators consideration of a substantive challenge to a contract unless there has been an independent challenge to the making of the arbitration clause itself. The basis of the underlying challenge to the contract does not alter the severability principle. Thus, the Seventh Circuit, applying *Prima Paint* to a case similar to the one before us, held that a party could not avoid arbitration through rescission of an entire agreement when it had made no independent challenge to the arbitration clause. *See, Wilson Wear, Inc. v. United Merchants & Manufacturers, Inc.*, 713 F.2d 324, 327-28 (7th Cir. 1983).

*Unionmutual Stock Life Ins. Co. of Am. v. Beneficial Life Ins. Co.*, 774 F.2d 524, 528-29 (1st Cir. 1985). The reasoning applies a fortiori to a claim of mutual mistake.[2] In the instant case, Masco's claims, including its mutual mistake claim, are entirely unrelated to the arbitration clause. As Masco's complaint makes clear, its allegation of mutual mistake concerns the coverage of the automobile liability policies, not the arbitration clause itself. *Prima Paint* accordingly requires reversal.

---

[2]This is not like a case where, for instance, a contract is void for lack of a valid signature. In such cases, courts have indicated that an arbitration clause contained in the contract would not be binding. *See, e.g., Chastain v. The Robinson-Humphrey Co., Inc.*, 957 F.2d 851, 855 (11th Cir. 1992). Such cases involve the asserted total absence of any expressed intent to arbitrate contractual issues. There is clearly no such absence in this case, where at most the contract is voidable rather than void ab initio. (We do not mean to suggest that *Prima Paint* cannot apply in at least some cases of contracts that are allegedly void, only that *Prima Paint does* apply where the contract is said to be voidable rather than void.)

The judgment of the district court is **REVERSED** and **REMANDED** for proceedings consistent with this opinion.

————————

**DISSENT**

————————

BOYCE F. MARTIN, JR., Circuit Judge, dissenting. This is not a simple case. At its core, it asks whether a state-court decision can trump the clear intent of the parties and bar access to a declaration of rights in federal court. Because I believe that Masco and Zurich did not agree to arbitrate this dispute, I respectfully dissent. When we compel arbitration, we should actualize the parties' intent. I do not believe that is what the Court has done.

My principal difference with the Court, and the reason I cannot join the opinion, is that I believe the arbitration agreement, as applied to a dispute over uninsured/underinsured-motorist coverage, is not binding on the parties due to a mutual mistake. In other words, I believe the parties did not intend for this dispute to go arbitration. They did not intend for there to be uninsured/underinsured-motorist coverage at all.

The law is clear. "Before compelling an unwilling party to arbitrate, [a] court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and the specific dispute falls within the substantive scope of that agreement." *Bratt Enters., Inc. v. Noble Intern., Ltd.*, 338 F.3d 609, 612 (6th Cir. 2003). "An arbitration agreement may be invalidated for the same reasons for which any contract may be invalidated, including forgery, unconscionability, and lack of consideration." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 393 (6th Cir. 2003). "'[O]rdinarily state-law principles that govern formation of contracts' will apply to this analysis." *Id.* at 394 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). One who challenges an arbitration clause must make

an argument that is specific to the arbitration clause and does not challenge the contract as a whole. *See Burden v. Check into Cash of Kentucky, LLC*, 267 F.3d 483, 491 (6th Cir. 2001).

There appears to be some dispute as to what state law governs the validity of the arbitration agreement. Zurich suggests that New York law applies. Masco is not willing to concede that New York law applies, but it does not offer a suggestion of what law applies, or which it would prefer to apply. The deductibles agreement contains a New York choice-of-law provision, and the District Court applied New York law. I need not reach the issue in my reasoning, however, as there is no conflict between Ohio and New York state law as to the relevant issue. Both Ohio and New York recognize that a defense of mutual mistake will generally support the rescission or reformation of a contract. *See Reilley v. Richards*, 69 Ohio St. 3d 352, 352-53, 632 N.E.2d 507, 509 (1994), and *Morris v. New York City Employees' Ret. Sys.*, 129 F. Supp. 2d 599, 605 (S.D.N.Y. 2001).

Under Ohio law, a "mistake is material when it is a mistake as to a basic assumption on which the contract was made that has a material effect on the agreed upon exchange of promises." *R.J. Wildner Contracting Co., Inc. v. Ohio Tpk.*, 913 F. Supp. 1031, 1041 (N.D. Ohio 1996). "The mutual mistake must . . . frustrate the intent of the parties." *Ibid.* Similarly, "[u]nder New York law a remedy for mistake is available only where a mistake of both parties at the time the contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performance." *Emergent Capital Inv. Mgmt., LLC v. Stonepath*, 165 F. Supp. 2d 615, 624 (S.D.N.Y. 2001) (internal citations and quotations omitted). The mistake must speak "to the very nature of the subject sold . . . for example, where what both parties believed to be barren cow turns out to be a calf." *Ibid.*

I am convinced that under either Ohio law or New York law the parties' mutual mistake as to their repudiation of uninsured/underinsured-motorist coverage was fundamental, and significantly affected their agreed upon exchange of promises. When Masco and Zurich agreed to arbitrate "any dispute" arising out of the deductibles agreement, they knew what the range of those disputes might be. They knew, because they had just negotiated the substantive terms of the contract. They *both* thought this contract was a barren cow, with uninsured/underinsured-motorist coverage expressly rejected, not a calf, with coverage aplenty. It is true that an Ohio Supreme Court case changed the coverage from a barren cow to a calf, but that does not change the nature of the mistake. Nor does it change the time of the mistake. The parties were mistaken as to a key fact – what was being sold – at the time they agreed to arbitrate "any dispute." By submitting this case to arbitration, I believe the Court ignores a clear mutual mistake and judicially constructs intent to arbitrate when the facts at the time the parties signed the contract repudiate that construction.

Arbitration is a creature of consent. *Inland Bulk Transfer v. Cummins Engine Co.*, 332 F.3d 1007, 1015 (6th Cir. 2002). Consent, in turn, is a creature of intent. It is the parties' intent and not ours that dictates whether a dispute should be arbitrated. *See Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (2003). Here the parties were clear as to their intended coverage relationship, and derivatively clear, although in an implied way, as to the limited scope of the arbitration agreement. That the parties were mutually mistaken about the scope of their uninsured/underinsured-motorist coverage, or lack thereof, does not change their original limited intent as to arbitration. To do so by judicial fiat, it seems, would frustrate their original purpose.

Relatedly, I don't find persuasive the Court's reading of *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395 (1967). *See also Burden* 267 F.3d at 491. The

*Prima Paint* Court held that an argument that contests the applicability of an arbitration agreement must be specific to the arbitration agreement and not be a defense that invalidates the whole contract. *Prima Paint,* 388 U.S. at 404. Stretched to an extreme, the *Prima Paint* Court's instruction could bar a lower court from looking at the rest of a contract when analyzing the validity of an arbitration agreement. I do not believe that was the intent of the *Prima Paint* Court – especially in the context of a mutual-mistake defense. The reasons for not applying an arbitration agreement must be specific to the arbitration agreement, it is true, but the parties' intent, as manifested in the whole agreement, certainly can inform our understanding of the parties' intent as to the scope of the arbitration agreement. Here, Masco and Zurich's specific exclusion of uninsured/underinsured-motorist coverage from their limited relationship suggests that they did not intend their arbitration agreement to control claims based on uninsured/underinsured-motorist coverage, or had at least not expressly agreed to submit those claims to arbitration. It is our duty to give some effect to that repudiation.

My analysis is not premised on a question of forseeability. Instead, it gives effect to the parties' contractual language. *See Deputy v. Lehman Bros. Inc.,* 345 F.3d 494, 513 (7th Cir. 2003). Put in abstract terms, arbitration agreements speak to the parties' intent regarding how alleged breaches of duties are to be resolved. If, at the time they agree to arbitrate alleged breaches of duty A or B, parties to a contract expressly agree that there is no duty C, I believe it is a logical construction of the parties' manifested intent not to arbitrate any later alleged breach of the expressly repudiated duty C.

The Court rejects my view, arguing that my understanding is a hidden ruling on the merits. I do not think it is. I concede, as I must, that Masco can, and likely will, assert a mutual-mistake defense in the substantive dispute. The facts alleged will be the same, but the legal analysis will be different. The arbitration analysis looks only at *where* the

parties agreed to resolve a dispute. It is a question of contract law and contract interpretation. Unlike the Court, I suspect the resolution of the substantive issue will have very little to do with Ohio contract law. The parties expressly excluded uninsured/underinsured-motorist coverage from their contractual relationship. My hunch is that the parties will be tossing around arguments regarding: gratuitous payments, failure to join, implied indemnities, and the like. Consequently, the trier of the substantive issue will likely resolve a question of equity and fairness, not a question of contract law. Thus, I do not think my analysis is a ruling on the merits. The mutual mistake certainly defeats the claim that the parties should be compelled to resolve this dispute in arbitration, but it does not necessarily resolve the merits question. After reviewing the equities, the trier of the substantive issue may or may not find in favor of Zurich. Where to resolve the dispute and how to resolve the dispute are separate questions.[1]

---

[1]The Majority distinguishes *Chastain v. The Robinson-Humphrey Co., Inc.*, 957 F.2d 851 (11th Cir. 1992) in a footnote. I, in turn, disagree in a footnote. In the body of its opinion, the Majority argues that: "[t]he [*Prima Paint*] Court reasoned that a court may consider only claims considering the validity of the arbitration clause itself, as opposed to challenges to the validity of the contract as a whole, in determining whether a valid agreement exists." *Ante* at 9. In *Chastain*, the Eleventh Circuit reasoned that the Supreme Court's holding in *Prima Paint* does not compel the arbitration of "a purported contract which *indisputably* lacks the formalities necessary to signal Chastain's *ex ante* assent to the agreement as a whole." *Id.* at 855. While I believe that Masco's mutual-mistake argument satisfies the *Prima Paint* doctrine, it is enough to note that the Eleventh Circuit believed that an argument, which *potentially* could invalidate the contract as a whole, could also defeat an attempt to compel arbitration. In essence, the question to ask is whether the purported invalidating cause can be asserted once or twice. If a party can only argue that the contract is invalid, then *Prima Paint* instructs that the case should be sent to arbitration. If the argument can be asserted twice – i.e., (1) the lack of a signature invalidates the arbitration clause, and (2) the lack of a signature also invalidates the contract as a whole – then *Prima Paint's* separability doctrine is satisfied, and a district court is free

I admit I am not without some sympathy for Zurich's argument. The parties agreed that disputes arising out of the "interpretation, performance or alleged breach" of the deductibles agreement would be submitted to arbitration. The Court accepts this contention and believes this is a dispute about deductibles. I believe that view is too narrow. To reach the conclusion advanced, the Court has to read the deductibles agreement and the arbitration clause in a vacuum. This is actually a dispute about the deductibles agreement as it relates to uninsured/underinsured-motorist coverage – coverage that both parties thought at the time they agreed to arbitrate deductibles disputes had been expressly rejected. At best, Zurich can argue that the parties probably would have wanted to submit this type of claim to arbitration, but "probably" is not enough. Although there is a "liberal federal policy favoring arbitration agreements," *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983), and it is "a well established rule that any doubt regarding arbitrability should be resolved in favor of arbitration," *Fazio*, 340 F.3d at 392, "[t]he duty to arbitrate a dispute derives from the parties' agreement and a party cannot be required to submit to arbitration any dispute that the party has not agreed to submit." *Bratt Enters.*, 338 F.3d at 612. Evidence of what they might have done is different than evidence of what they did. That the arbitration agreement can be interpreted to cover Zurich's claim is a product of both parties' mistake, and by submitting this claim to arbitration, the Court extends the scope of the original agreement to an extent I do not believe the parties agreed to or intended.

Lastly, I disagree with the Court's alternative holding that Masco waived the mutual-mistake argument. It is true that the Court in *Rybarczyk v. TRW, Inc.,* 235 F.3d 975, 984 (6th

---

to move on to hearing the merits of the case. I believe my argument is entirely consistent with this position. As I have explained, the mutual-mistake defense can be asserted twice.

Cir. 2000), stated that "[f]ailure to raise an issue on appeal would normally constitute a waiver." But, in the very next sentence, the Court states: "[h]ere, however, we have a pure question of law that cries out for resolution – and in such a situation we are not foreclosed from considering the issue." *Ibid.; see also Hutcherson v. Lauderdale Cty.*, 326 F.3d 747, 756 (6th Cir. 2003) (holding an appellate court may reach legal issue not raised by the parties to *affirm* the lower court). While I think Masco sufficiently raised the mistake argument to survive a waiver challenge, even if it hadn't, this is a purely legal issue that cries out for resolution.

I respectfully dissent.