[Cite as *Cedar Brook Fin. Partners Holdings, L.L.C. v. Schlang*, 2022-Ohio-3325.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CEDAR BROOK FINANCIAL              :
PARTNERS HOLDINGS, LLC, ET AL.,

      Plaintiffs-Appellants,    :

                                      No. 111072

      v.                     :

BRADLEY J. SCHLANG,              :

      Defendant-Appellee.    :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 22, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-20-939703

---

### *Appearances:*

Ciano & Goldwasser, L.L.P., and Phillip A. Ciano; Flowers & Grube, Paul W. Flowers, and Melissa A. Ghrist, *for appellants*.

Meyers, Roman, Friedberg & Lewis, Peter Turner, and David M. Smith, *for appellee*.

EMANUELLA D. GROVES, J.:

{¶ 1} Plaintiffs-appellants Cedar Brook Financial Partners Holdings, LLC ("CBFP"), Cedar Brook Financial Partners, LLC, and counterclaim defendant, William Glubiak, (collectively, "Appellants") appeal from the trial court's decision

granting defendant-appellee Bradley J. Schlang's ("Schlang") motion to compel arbitration and stay the case pending arbitration. For the reasons that follow, we affirm the trial court's decision.

**Factual and Procedural History**

{¶ 2} Both Appellants and Schlang are members or associated persons of the Financial Industry Regulatory Authority ("FINRA"). FINRA is a nonprofit corporation that functions as a self-regulatory organization for securities firms and securities dealers and is "'responsible for regulatory oversight of all securities firms that do business with the public.'" *Fiero v. Fin. Indus. Regulatory Auth., Inc.*, 660 F.3d 569 (2d Cir.2011), quoting 15 U.S.C. 78c(a)(26), 78s(b). FINRA Rule 13200 mandates arbitration for "any dispute that arises out of the business activities of a member or an associated person and is between or among members, members and associated persons; or associated person." Typically, an analysis of whether FINRA Rule 13200 applies starts with determining whether the parties are FINRA members or associated persons. However, here, the parties agree that they are members or associated persons under FINRA rules and are therefore bound by FINRA rules to arbitrate when required. They disagree about whether some of the claims are arbitrable under FINRA rules. The underlying facts are as follows.

{¶ 3} Appellants operate a full-service investment planning and management firm that provides financial advisory services to individuals in and outside of Ohio. Schlang was an equity member of CBFP. In May 2016, CBFP bought Schlang's membership interest in the company and the parties executed an

agreement (the "Redemption Agreement") and promissory note regarding the sale. The Redemption Agreement called for CBFP to pay Schlang $348,410 plus interest in quarterly payments over the course of ten years. It also had a provision in case of a windfall (the "Windfall Events Provision"). In the event CBFP received any amounts up to but not exceeding $250,000 as the result of a recapitalization event, sale, acquisition, or merger, such funds would be paid to Schlang. The Redemption Agreement also allowed CBFP to suspend payments to Schlang if CBFP's gross dealer concession ("GDC") fell below $10.8 million during the repayment period. If CBFP suspended payments, they were required to provide Schlang with a sworn and signed copy of the statement of GDC.

{¶ 4} After the parties signed the Redemption Agreement, Schlang remained as a nonemployee financial advisor affiliated with CBFP. In 2018, Schlang signed a Uniform Application for Securities Industry Registration or Transfer (commonly, "Form U4") relative to his association with Appellants. Section 15A(5) of that form provided:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my *firm*, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the *SROs* [self-regulatory organization] indicated in Section 4 (SRO REGISTRATION) as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

(Emphasis sic.)

{¶ 5} The form identified FINRA as the SRO.

{¶ 6} In March 2020, CBFP alleged that due to COVID-19, the GDC dropped below the threshold amount, and therefore, CBFP would suspend payments to Schlang until further notice. Schlang requested CBFP's financials in order to verify the company's findings. Thereafter, the parties attempted to negotiate an agreement regarding Schlang's payments. Appellants alleged that Schlang agreed to suspend the payments as of June 29, 2020, in what they term the 6/29/20 Suspension Agreement. Schlang denied agreeing to the suspension. Additionally, Schlang alleged that there had been a windfall event that Appellants failed to disclose to him. Such a windfall would have required Appellants to pay up to $250,000 to Schlang. Subsequently, the parties agreed to a settlement of the amounts owed to Schlang. Appellants alleged that that agreement was finalized on September 18, 2020, which they term the 9/18/20 Settlement Agreement. Schlang, however, claimed that the agreement was to be finalized upon execution of a mutual release.

{¶ 7} On September 28, 2020, Appellants sent a mutual release to Schlang. Schlang objected to the release, arguing that it included new and objectionable terms. The following month, Schlang formally notified Appellants that they had failed to make the last three quarterly payments to him pursuant to the Redemption Agreement and that if he did not receive payment within 15 days they would be in default of that agreement. On or about October 15, 2020, Appellants severed their relationship with Schlang and asked him to vacate the premises. Prior to leaving, Schlang downloaded information regarding his clients from Appellants' computers.

On October 29, 2020, Appellants filed a complaint that alleged Schlang's demand for payment was a breach of the 6/29/20 Suspension and the 9/18/20 Settlement Agreements.

{¶ 8} The parties vigorously litigated the case with multiple complaints and answers. Ultimately, Appellants filed a second amended complaint on June 3, 2021, that alleged the following: breach of contract alleging Schlang breached the 6/29/20 Suspension Agreement (Count 1); anticipatory repudiation, arguing Schlang refused to proceed with the 9/18/20 Settlement Agreement (Count 2); specific performance, asking the court to enforce the 9/18/20 Settlement agreement (Count 3); conversion (Count 4); violation of the Uniform Trade Secrets Act (Count 5); tortious interference with business relations (Count 6); and declaratory judgment asking the court to find both the 6/29/20 and 9/18/20 agreements binding and enforceable (Count 7).

{¶ 9} Schlang counterclaimed against Appellants and William Glubiak, CBFP's managing member. His claims included breach of contract on the promissory note (Count 1); breach of contract for failure to make the windfall payment according to the Redemption Agreement (Count 2); breach of contract, for failure to pay compensation for client fees (Count 3); fraudulent concealment, for concealing information regarding a windfall event (Count 4); fraudulent misrepresentation, for lying about the GDC dropping below the threshold amount (Count 5); and declaratory judgment, asking the court to determine the rights and obligations in his favor (Count 6).

{¶ 10} Schlang discovered after litigation commenced that Appellants had filed a Uniform Termination Notice for Securities Industry Registration (commonly, "Form U5") that he claimed was defamatory. A Form U5 is a document that must be filed whenever there is a termination of employment. Schlang moved to amend his counterclaim to add a claim relative to the alleged defamatory action. Appellants objected arguing that that claim was subject to FINRA arbitration. The trial court denied the motion, finding that Schlang's defamation counterclaim was subject to binding arbitration under FINRA Rule 13200 and the express arbitration agreement in Schlang's Form U4. The court further noted, "[O]n the other hand, the claims and counterclaims asserted by the parties thus far are outside the scope of the mandatory arbitration provisions of FINRA Rule 13200."

{¶ 11} On June 17, 2021, Schlang filed a motion to compel arbitration and stay proceedings on Appellants' tortious interference with business relations claim. He also asked the court to reconsider its ruling finding that the remaining claims were not subject to arbitration. Appellants objected, arguing in part, that none of the claims arose out of the parties' "business activities" under FINRA Rule 13200.

{¶ 12} The trial court granted the motion, noting that the phrase "arise out of" has been broadly defined and, finding that each of the claims arose out of the business activities between the parties as FINRA members or associated persons.

{¶ 13} Appellants now appeal. Preliminarily, the parties have agreed that Counts 4-6 of the complaint are subject to FINRA arbitration. However, they dispute whether the remaining issues that involve the Redemption Agreement, i.e.,

Counts 1-3, and 7, and counterclaim Counts 1-6, "arise out of business activities" pursuant to FINRA Rule 13200. Appellants assign the following error for our review:

## Assignment of Error

The trial court erred, as a matter of law, and otherwise committed an abuse of discretion by reversing its prior decision and staying the original claims based upon contract theories, fraud, and declaratory relief pending arbitration before the Financial Industry Regulatory Authority.

## Law

{¶ 14} "Both the Ohio General Assembly and Ohio courts have expressed a strong public policy favoring arbitration." *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 15, citing R.C. Chapter 2711; *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 27; *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 700 N.E.2d 859 (1998). The benefits of arbitration include being "'relatively expeditious and [an] economical means of resolving a dispute.'" *Id.*, citing *Schaefer v. Allstate Ins. Co.*, 63 Ohio St.3d 708, 590 N.E.2d 1242 (1992), quoting *Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities v. Mahoning Cty. TMR Edn. Assn.*, 22 Ohio St.3d 80, 488 N.E.2d 872 (1986). Additionally, it frees up crowded court dockets. *Id.*, citing *Mahoning Cty. Bd. of Mental Retardation*, at ¶ 83. "In light of the strong presumption favoring arbitration, all doubts should be resolved in its favor." *Id.*, citing *Ignazio v. Clear Channel Broadcasting, Inc.*, 113 Ohio St.3d 276, 2007-Ohio-1947, 865 N.E.2d 18.

{¶ 15} This strong public policy in favor of arbitration is codified in R.C. 2711.01(A), which states that an arbitration agreement "shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract." R.C. 2711.02(B) provides for a stay of litigation pending arbitration stating:

> If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

**Standard of Review**

{¶ 16} When, as in this case, a party appeals an order granting or denying a stay pending arbitration under R.C. 2711.02(B), our standard of review depends on the nature of the issues raised on appeal. *McCaskey v. Sanford-Brown College,* 8th Dist. Cuyahoga No. 97261, 2012-Ohio-1543, ¶ 7. Determining whether parties are bound by an arbitration provision requires an interpretation of the contract, which is a question of law that appellate courts review de novo. *Cercone v. Merrill Lynch, Pierce, Fenner & Smith*, 8th Dist. Cuyahoga No. 89561, 2008-Ohio-4229, ¶ 14. Here the parties agree that they are bound by Schlang's U4 and FINRA membership to arbitrate some aspects of their dispute; however, they disagree about whether claims related to the Redemption Agreement are required to be arbitrated under FINRA

Rule 13200. Therefore, we are tasked with interpreting the meaning of "business activities" as used in FINRA Rule 13200.

**Analysis**

{¶ 17} In this case, we are determining de novo whether the trial court correctly granted a motion to compel FINRA arbitration. FINRA arbitration is governed by specific rules and regulations and, in some instances, those rules and regulations make arbitration of certain types of disputes mandatory. It is with recognition of this specific area of law that we begin our analysis. Although we are not bound by the trial court's findings, it is a useful starting place to begin our review. In its decision, the trial court noted:

> [T]he court reconsiders its finding of 6/2/2021 that all claims previously asserted were outside the scope of FINRA Rule 13200. The Second Circuit Court of Appeals has broadly interpreted the, "arise out of," in arbitration clauses like that in FINA [sic] Rule 13200. "If the allegations underlying the claims 'touch matters' covered by the parties' * * * agreements, then those claims must be arbitrated." Greenberg [v. Ameriprise Fin. Servs., E.D.N.Y. No. 15-CV-3589 (ADS)(AYS), 2016 U.S. Dist. LEXIS 45250, 22 (Mar. 31, 2016)] * * *.
>
> The parties' claims relating to the parties' promissory note, suspension agreement and settlement agreement arise out of the business activities with each other as FINRA member and associated person. See Axos Clearing, Ltd. Liab. Co. v. Reynolds, S.D.Fla. No. 19-CIV-20979-RAR, 2019 U.S. Dist. LEXIS 149622, at ¶ 10-17 (Aug. 30, 2019).
>
> * * *
>
> In light of the foregoing, this matter is stayed pending arbitration.

{¶ 18} Appellants argue, however, that the trial court's initial decision was correct. They argue that the claims regarding the Redemption Agreement do not "arise out of business activities" under FINRA Rule 13200. Appellants would

narrowly define "business activities" to mean activity related to investment banking and securities transactions.

{¶ 19} "Business activities" is not defined in the FINRA rules. When FINRA Rules are incorporated into the parties' contract, interpretation of FINRA Rules is a question of contract interpretation. *Piston v. Transamerica Capital, Inc.*, 823 Fed.Appx. 553, 556 (10th Cir.2020), citing FINRA Code, Rule 13101(b) ("When a dispute is submitted to arbitration under the Code pursuant to an arbitration agreement, the Code is incorporated by reference into the agreement."). In analyzing a contract, "common words appearing in a written agreement are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." *Alexander v. Buckeye Pipeline Co.,* 53 Ohio St.2d 241, 246, 374 N.E.2d 146 (1978), citing *First Natl. Bank v. Houtzer*, 96 Ohio St. 404, 117 N.E.383 (1917), *Garlick v. McFarland*, 159 Ohio St. 539, 113 N.E.2d 92, (1953), *Olmstead v. Lumbermens Mutl. Ins. Co.*, 22 Ohio St. 2d 212, 259 N.E.2d 123 (1970), *Jolliff v. Hardin Cable Television Co*., 26 Ohio St. 2d 103, 269 N.E.2d 588 (1971).

{¶ 20} A number of courts have looked at FINRA Rule 13200 and defined what is meant by "arising out of business activities." Preliminarily, courts recognize that the phrase "business activities" is "quite broad." *See Griffis v. Wells Fargo Advisors, LLC*, N.D.Ill. No. 13 CV 8372, 2014 U.S. Dist. LEXIS 90688, 12 (July 3, 2014). In fact, the Merriam-Webster Dictionary defines "business" as "a usually commercial or mercantile activity engaged in as a means of livelihood" and "activity"

as "the quality or state of being active:  behavior or actions of a particular kind." Merriam-Webster. (n.d.) https://www.merriam-webster.com/dictionary/business (accessed Sept. 15, 2022,); Merriam-Webster. (n.d.). https://www.merriam-webster.com/dictionary/activity (accessed Sept. 15, 2022).  These definitions encompass a wide range of conduct.

{¶ 21}  In *Griffis*, an employee sued Wells Fargo and his supervisor asserting claims of fraud in the inducement, intentional misrepresentation, tortious interference with business relations, and deceptive business practices.  When Griffis accepted employment with Wells Fargo he was given a "transition bonus" of $200,000 that was secured by a promissory note.  When he quit, Wells Fargo demanded he pay back the balance of the bonus; however, Griffis argued that he was fraudulently induced into signing the promissory note.  Wells Fargo moved to stay the proceeding and compel arbitration.  The court granted the motion finding that the broad language of FINRA Rule 13200 clearly covers recruiting employees.  *Id.* at ¶ 12-13.

{¶ 22} Other courts have addressed the phrase "business activities" in FINRA Rule 13200, finding it covers more than investment banking and securities transactions.

{¶ 23} In *Wells Fargo Advisors, LLC v. Quantum Fin. Partners LLC*, D.Kan. No. 15-9145-JAR-JPO, 2015 U.S. Dist. LEXIS 113038 (Aug. 25, 2015), the court found that a copyright infringement issue was subject to FINRA Rule 13200 arbitration.  In that case, the employee, Jacobs, assigned to his employer, Wells

Fargo, the copyright to any intellectual property he created while under their employ. During that time, he created a tool, which, when he left the company, he provided to his new employer, Quantum Finance. Wells Fargo sued for copyright infringement, and Jacobs filed a motion to compel arbitration. The court noted that Jacobs signed a Form U4 and found that a) the copyright dispute arose out of the business activities of the two parties, and b) Form U4 covers "any dispute" between the employee and his or her firm and would include the copyright claim. *Id*. at ¶ 10.

{¶ 24} In *Axos Clearing, LLC v. Reynolds*, S.D.Fla. No. 19-CIV-20979-RAR, 2019 U.S. Dist. LEXIS 149622 (Aug. 30, 2019), the court found a settlement agreement dispute was properly addressed in FINRA arbitration. Reynolds was employed by Spartan Securities Group, Ltd. ("Spartan"). Spartan was authorized to make certain securities transactions for Axos Clearing LLC ("Axos"). Reynolds engaged in a series of unauthorized securities trades that resulted in an injury to Axos of more than $16,000,000. Axos and the defendants entered into a settlement agreement requiring repayment of Axos's losses over time. Ultimately, the defendants did not meet the terms of the settlement agreement. Axos sued, alleging fraudulent inducement, fraudulent misrepresentation, negligent misrepresentation, fraudulent failure of disclosure, tortious interference with contractual relations, breach of pledge agreement, and unjust enrichment. The defendants filed a motion to compel arbitration arguing that the grievances were subject to mandatory FINRA arbitration. Axos argued that FINRA arbitration did not apply because its complaint was "'a simple breach of contract claim arising out of the parties' Settlement

Agreement,' not the business activities of an associated person." *Id.* at ¶ 10. The court looked at the underlying facts of the complaint and determined that the signing and breach of the settlement agreement stemmed from Reynolds's actions during the course of his employment. *Id.* at ¶ 15. The court found that all of the claims were subject to FINRA arbitration because there was "a clear nexus between the alleged wrongdoing in all of these claims and the actions of Mr. Reynolds as an associated person." *Id.* at ¶ 16.

{¶ 25} Both parties cite *Valentine Capital Asset Mgt., Inc. v. Agahi*, 174 Cal.App.4th 606, 94 Cal.Rptr.3d 526 (2009), because the court attempted to define "business activities" more precisely. In that case, the court recognized that under the broad language of FINRA Rule 13200, "business activities" could encompass a situation where two FINRA-affiliated persons were engaged in a transaction unrelated to their FINRA-based employment, for example, a residential real estate transaction or an art sale. *Id.* at 616. However, the court determined that arbitration is only mandatory under FINRA Rule 13200 if the dispute between the parties arises out of their business activities *as* FINRA members and/or associated persons of a FINRA member. *Id.* at 617. In *Valentine*, all the parties were FINRA members or associated persons. However, their business dealings involved their respective roles as employees and a principal, of a company that was not a FINRA member. The court found that FINRA Rule 13200 did not apply in that situation. *Id.* at ¶ 627.

{¶ 26} Based on the foregoing, we reject Appellants' contention that "business activities" under FINRA Rule 13200 is limited to conduct involving

investment banking and securities transactions. Rather, we follow the courts that have interpreted the term based on the role of the parties as FINRA members and/or associated persons and the business activities that arise out of that relationship.

{¶ 27} Here, the parties' dispute clearly arises from their business activities as FINRA members or associated persons. The Redemption Agreement describes the terms by which CBFP would buy Schlang's interest in CBFP, and also addresses his employment with the company:

> WHEREAS, after careful consideration of all pertinent facts and circumstances, as a condition to the execution and delivery of the Redemption Agreement, the Parties desire to enter into this Agreement to resolve amicably by a good faith settlement all matters and issues actually or potentially in controversy between them related to Schlang's ownership of CBFP, and to settle any and all such disputes related to the sale of the Schlang Interest *and Schlang's employment* at CB on the terms and conditions set forth in this Agreement.

(Emphasis added.)

{¶ 28} The agreement also purports to release Schlang from

> any and all claims, losses, damages, demands, rights, actions, causes of action, liens, and alleged obligations or liabilities of any kind or nature, as well as any and all requests for attorneys' fees, treble damages, punitive damages, penalties, and costs, of any nature whatsoever arising from or related in any way to * * * Schlang's prior employment by CB * * *.

{¶ 29} The Redemption Agreement, and the subsequent litigation arising from it, stem from the business activities of Schlang and Appellants as FINRA members or associated persons. As such, the trial court did not err in finding that all the claims were subject to arbitration under the arbitration agreement in Schlang's U4 and FINRA Rule 13200.

{¶ 30} Next, Appellants argue that even if the claims are subject to FINRA arbitration, the Redemption Agreement had a forum-selection clause that controls in this case. The clause states:

> Governing Law/Forum Selection. * * * Any lawsuit arising out of this Agreement and/or the redemption of the Schlang Interest shall be filed in the Cuyahoga County, Ohio Court of Common Pleas.

{¶ 31} In contrast, Schlang's U4 provided that he and CBFP agreed to arbitrate "any dispute, claim or controversy * * * that is required to be arbitrated under the rules, constitutions, or by laws of [FINRA]" that arose between him and his firm. Additionally, FINRA Rule 13200 indicates that any such dispute "must" be arbitrated. *See Fort Washington Invest. Advisors, Inc. v. Adkins*, S.D.Ohio No. 1:19-cv-685, 2021 U.S. Dist. LEXIS 70009, ¶ 12 (Apr. 12, 2021) (noting that a signed Form U4 binds parties to arbitrate disputes.).

{¶ 32} Appellants cite three cases for the proposition that a forum-selection clause can override a FINRA arbitration. However, those cases are distinguishable.

{¶ 33} In *New York Bay Capital, LLC v. Cobalt Holdings, Inc.*, 456 F. Supp. 3d 564 (S.D.N.Y.2020), the court analyzed a forum-selection clause that stated the parties agreed to "irrevocably submit[] to the exclusive jurisdiction of the United States District Court for the Southern District of New York" for "any action, suit or proceeding arising out of or relating to this Engagement or any of the transactions contemplated hereby[.]" *Id*. at 570. Comparing that clause to FINRA rules, the court found that the parties' contract displaced FINRA's arbitration requirements, because, under New York law, the "'fundamental, neutral precept of contract

interpretation is that agreements are construed in accord with the parties' intent.'" *Id.*, quoting *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 780 N.E.2d 166, 750 N.Y.S.2d 565 (2002). By their contract, the parties explicitly agreed to forego arbitration. *Id.* In the instant case, the forum-selection clause does not purport to have the parties "irrevocably submit" to the jurisdiction of a court, nor does it cover "any action, suit or proceeding." Further, the Redemption Agreement is silent as to arbitration.

{¶ 34} In *Goldman, Sachs & Co. v. Golden Empire Schools Financing Auth.*, 764 F.3d 210 (2d Cir.2014), the court tackled two cases that utilized the following forum-selection language:

> The parties agree that all actions and proceedings arising out of this Broker-Dealer Agreement or any of the transactions contemplated hereby shall be brought in the United States District Court in the County of New York and that, in connection with any such action or proceeding, submit to the jurisdiction of, and venue in, such court.

{¶ 35} The court first noted that there is disagreement among the federal circuits as to whether similar forum-selection clauses supersede FINRA arbitration.[1] *Id.* at 214 (noting that the Ninth Circuit has found that a forum-selection clause can supersede FINRA arbitration *Goldman, Sachs & Co. v. Reno,* 747 F.3d 733, 743-747 (9th Cir. 2014), citing *Goldman, Sachs & Co. v. N.C. Mun. Power Agency No. One*, S.D.N.Y. No. 13 CIV. 1319, 2013 U.S. Dist. LEXIS 172994 (Dec. 9, 2013); *Goldman, Sachs & Co. v. Golden Empire School Fin. Auth.,* 922 F.Supp.2d 435) (S.D.N.Y.

---

[1] While this case addresses FINRA Rule 12200, customer arbitration, the language is virtually identical to FINRA Rule 13200.

2013)); *see also Citigroup Global Market Inc. v. All Children's Hosp., Inc.*, 5 F.Supp.3d 537 (S.D.N.Y. 2014). But the Fourth Circuit, looking at a nearly identical forum-selection clause, found that it did not supersede FINRA rules. *UBS Fin. Servs., Inc. v. Carilion Clinic*, 706 F.3d 319 (4th Cir.2013); *see also, UBS Secs. LLC v. Allina Health Sys.*, D.Minn. No. 12-2090, 2013 U.S. Dist. LEXIS 17799 (Feb. 11, 2013). The court then went on to find that "a forum-selection clause requiring 'all actions and proceedings' to be brought in federal court supersedes an earlier agreement to arbitrate." *Id.* at 215. Here, the language "any lawsuit" does not have the same preclusive effect of waiving arbitration when compared to arbitration language that covers "any dispute, claim or controversy."

{¶ 36} Finally, Appellants cite *Goldman, Sachs & Co. v. Reno*, 747 F.3d 733 (9th Cir.2014), which also dealt with a forum-selection clause that covered "all actions and proceedings" and made similar findings.

{¶ 37} The Sixth Circuit has looked at this issue as well. Although not addressing FINRA arbitration specifically, that court found that

> [w]hen a contract contains an arbitration clause, there is a general presumption of arbitrability, and any doubts are to be resolved in favor of arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Where the arbitration clause is broad, only an express provision excluding a specific dispute, or "the most forceful evidence of a purpose to exclude the claim from arbitration," will remove the dispute from consideration by the arbitrators. *Id.*

*Highlands Wellmont Health Network v. John Deere Health Plan*, 350 F.3d 568,

576-577 (6th Cir.2003).

{¶ 38} In a subsequent case, the court addressed the following clause, or "service of suit" clause that stated:

> It is agreed that in the event of the failure of the Reinsurer hereon to pay any amount claimed to be due hereunder, the Reinsurer hereon, at the request of the Company, will submit to the jurisdiction of a court of competent jurisdiction within the United States.

*Child Dimensions Ins. Co. v. Lexington Ins. Co.*, N.D.Ohio No. 5:09CV670, 2009 U.S. Dist. LEXIS 147059, 3-4 (July 16, 2009)

{¶ 39} This clause was compared to an arbitration clause in the same contract that read,

> "[A]ny and all disputes or differences arising out of this Certificate, including its formation and validity, shall be submitted to binding arbitration. Any arbitration shall be based upon the Procedures for the Resolution of U.S. Insurance and Reinsurance Disputes dated September 1999 (the "Procedures")[.]"

*Id.* at 3.

{¶ 40} The court found that only an express provision or forceful purpose to exclude the dispute from arbitration would override the arbitration clause. *Id.* at 8, citing *Highlands Wellmont Health Network v. John Deere Health Plan*, 350 F.3d 568 (6th Cir.2003). The court further noted that the Federal Arbitration Act ("FAA") establishes a "'liberal federal policy favoring arbitration agreements.'" *Id.*, quoting *Masco Corp. v. Zurich Am. Ins. Co.,* 382 F.3d 624 (6th Cir.2004). Consequently, there is a "'general presumption of arbitrability and to resolve any doubts in favor of arbitration[.]'" *Id.*, quoting *Watson Wyatt & Co. v. SBC Holdings, Inc.,* 513 F.3d 646 (6th Cir.2008). Nevertheless, while ambiguities should be

resolved in favor of arbitration, the clear intent of the parties, as expressed in their contract, governs. *Id.* at 8-9, citing *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002).

{¶ 41} Given the foregoing, we find that the language in Schlang's Form U4 is a broad arbitration clause, mandating arbitration of any dispute, claim, or controversy that is required to be arbitrated under the rules, constitutions, or by-laws of FINRA. Therefore, unless the forum-selection clause explicitly removes the dispute from arbitration or forcefully excludes arbitration, the arbitration clause is controlling. In this case, the forum-selection clause does not address arbitration at all. It merely states that "any lawsuit" must be filed in the Cuyahoga County Common Pleas Court. This language does not explicitly and/or forcefully exclude the Redemption Agreement from arbitration. Here, given the preference for arbitration, the term "any lawsuits" means any dispute unresolved in arbitration. Consequently, FINRA arbitration prevails. Given the above considerations, we agree with the trial court's finding that the forum-selection clause does not supersede the arbitration clause in the Form U4 or FINRA Rule 13200.

{¶ 42} Accordingly, we overrule Appellants' assignment of error.

{¶ 43} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

MICHELLE J. SHEEHAN, P.J., and
LISA B. FORBES, J., CONCUR